957 A.2d 1180

**Josephine GENERETTE, Appellant**

**v.**

**DONEGAL MUTUAL INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 2008.

Decided Oct. 23, 2008.

506

Thomas Paul Lang, Esq., Dale E. Anstine, P.C., Scott B. Cooper, Esq., Schmidt Kramer, P.C., Harrisburg, for Josephine Generette.

John W. Pollins, III, Esq., Greensburg, for amicus curiae The PA Trial Lawyers' Association.

Teresa Ficken Sachs, Esq., Post & Schell, P.C., Philadelphia, for Donegal Mutual Insurance Company.

Brooks Roderick Folan, Esq., Stephanie Lynn Hersperger, Esq., Thomas, Thomas & Hafer, L.L.P., Harrisburg, for amicus curiae PA Defense Institute.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice BAER.

In this case, we consider the interaction between 75 Pa.C.S. § 1733,[1] governing the priority of recovery of uninsured or underinsured motorist insurance under the Motor Vehicle Financial Responsibility Law ("MVFRL"), and the MVFRL's provision for the waiver of stacking of underinsured motorist coverage, 75 Pa.C.S. § 1738.[2] We hold that the Superior Court erred in concluding that the MVFRL provision relating to stacking and waiver applied to the Appellant, who was not an "insured" as defined by the MVFRL. Additionally, we hold that a portion of the "Other Insurance" clause in the Appellant's policy with Donegal Mutual Insurance Company ("Donegal") is non-enforceable because it conflicts with the public policy of the MVFRL to provide "excess" rather than "gap" underinsured motorist coverage. For the following reasons, we reverse the grant of summary judgment to Donegal and remand to the trial court for further proceedings.

On April 29, 1997, Josephine Generette ("Appellant") suffered injuries while riding as a guest passenger in a motor vehicle that collided with a third-party tortfeasor's vehicle. Appellant recovered $25,000 under the third-party tortfeasor's liability insurance policy. As her injuries exceeded the liability coverage provided by the tortfeasor, Appellant also recovered $50,000 from Nationwide Insurance Company, which provided underinsured motorist ("UIM") coverage for the car in which she was a guest passenger, hereinafter "Nationwide–

1. *See, infra* at 5, n. 7.
2. *See, infra* at 7, n. 11.

UIM." Appellant sought coverage for her remaining claims under her own policy with Donegal for underinsured motorist coverage, hereinafter "Donegal–UIM." [3] As relevant to the issues at bar, Appellant contracted for $35,000 of UIM coverage on the single vehicle insured through her Donegal–UIM policy and waived her ability to "stack" her coverage, as discussed in detail below. The parties stipulate that Appellant received premium reductions for each of the relevant renewal periods due to her waiver of stacking and her choice to reduce her UIM coverage from $100,000 to $35,000.

Donegal denied coverage for the April 1997 accident based on a provision in the policy entitled "Other Insurance." [4] The

3. Although not at issue before this Court, the details of Appellant's policy with Donegal evolved with the changing legislative requirements for vehicle insurance. When Appellant purchased her policy with Donegal in December 1982, the policy was governed by the No–Fault Motor Vehicle Insurance Act, and provided $100,000 of bodily injury liability coverage and $30,000 of uninsured motorist ("UM") coverage. Appellant sought to renew her policy in December 1984, and in order to comply with the newly enacted MVFRL, she increased her UM/UIM coverage to equal her liability coverage of $100,000 per accident. In June 1985, she renewed the policy again with the same policy limits. In December 1985, however, Appellant executed a waiver form reducing her UM coverage from $100,000 to $35,000, in accordance with 75 Pa.C.S. § 1734, permitting the reduction of UM coverage below the level of liability coverage. She continued to renew her policy with these limits. At her first renewal following the enactment of Act 6 of 1990 amending the MVFRL, Appellant rejected stacking of UIM and UM coverages. In January 1992, Appellant added another car to her policy but did not change her waiver of stacking. In December 1992, Appellant removed a car from the policy. Every six months from December 1992 to December 1999, Appellant renewed her policy with the same limits.

4. "Other Insurance":
If there is other applicable similar insurance available under more than one policy or provision of coverage:
The following priorities of recovery apply:
First The [UIM coverage] applicable to the vehicle the "insured" was "occupying" at the time of the accident.
Second The policy affording [UIM coverage] to the "insured" as a named insured of family member.
1. When there is applicable insurance available under the First priority:
    a. The limit of liability applicable to the vehicle the "insured" was "occupying," under the policy in the First priority, shall first be exhausted; and

"Other Insurance" clause was included in her policy to implement the waiver of stacked UIM benefits. It limited recovery of UIM coverage under the Donegal–UIM policy to the amount by which the Donegal–UIM policy's coverage limit exceeded the coverage of the UIM policy at the first priority level. Accordingly, Donegal denied coverage claiming that her $35,000 coverage limit on her Donegal–UIM policy did not exceed the $50,000 of coverage provided by the Nationwide–UIM policy, the first priority policy.

Following Donegal's denial of her claim, Appellant filed a declaratory judgment action in the Court of Common Pleas of York County. As is relevant to the issues before this Court, she asked the trial court to declare the "Other Insurance" clause of the Donegal–UIM policy void as against public policy and that Appellant could recover benefits under the Donegal–UIM policy. In response, Donegal requested a declaratory judgment "that (1) the amount of UIM coverage available to [Appellant] under the Policy is $35,000 on a non-stacked basis and (2) [Appellant] is not entitled to receive any additional underinsured motorist benefits because of the non-stacked election in her Policy with Donegal Mutual." Donegal Answer and New Matter, at 4. In so arguing, Donegal invoked the "Other Insurance" clause, which as previously stated, Donegal read to bar any additional coverage because her $35,000 coverage limit on her Donegal–UIM policy, the second priority policy, did not exceed the $50,000 of coverage provided by the Nationwide–UIM policy, the first priority policy.

As is relevant to the issues before this Court, in July 2002, the trial court denied Appellant's motion for summary judgment finding that the waiver of stacking was valid and that the language of the Donegal–UIM policy did not violate public policy. In June 2003, the trial court granted Donegal's motion for summary judgment concluding that Appellant's waiver of

b. *The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority.*
Stipulation of Facts, Exhibit R, Underinsured Motorist Coverage— Pennsylvania (Non-stacked), at 3.

stacking was valid and enforceable and not against public policy.[5] After Appellant filed for reconsideration, the trial court denied the motion.

Appellant appealed the grant of summary judgment to the Superior Court. In her statement of matters complained of on appeal, Appellant asserted, "the trial court's granting of summary judgment in favor of the Defendant as to Appellant's waiver of stacking of underinsured motorist benefits was in error." [6] Appellant's Statement of Matters Complained of on Appeal, at 1. In support of that statement, she argued that the trial court's decision conflicted with the Superior Court's recent decision in *Nationwide Mutual Insurance Co. v. Harris*, 826 A.2d 880 (Pa.Super.2003), holding that inter-policy stacking was not waivable under single vehicle policies.

A three-judge panel reversed the trial court's decision in July 2004, finding the stacking waiver did not apply to the facts of Appellant's case and instead, concluding that recovery under the Donegal–UIM policy was proper pursuant to the MVFRL's priority of recovery provision, Section 1733.[7] Su-

5. Before the trial court and the Superior Court, the parties disputed whether Appellant's waiver of stacking on a single vehicle policy constituted a violation of public policy. After the filing of the Superior Court's opinion in this case, this Court determined in *Craley v. State Farm Fire and Casualty Co.*, 586 Pa. 484, 895 A.2d 530 (2006), that stacked coverage may be waived in single vehicle policies. Accordingly, we will not develop this aspect of Appellant's case in our discussion of the opinions of the trial and Superior Courts or the parties' arguments. The trial court also addressed several other arguments that are not before the Court.

6. By raising this broad issue regarding the error in applying the waiver of stacking in this case, Appellant did not technically or specifically set forth the issues presently before this Court regarding the inapplicability of the stacking waiver in guest passenger situations or whether the "Other Insurance" clause violates public policy. However, because the arguments are encompassed in her broad question and were central to the analysis of both Superior Court panels in this case, we believe her current issues are properly before us for review.

7. Section 1733, relating to the priority of recovery for UM and UIM coverages, provides:

(a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:
(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

per. Ct. Panel Slip Op. at 5–6.[8] The panel reversed the grant of summary judgment to Donegal and remanded the case.

Judge Joyce filed a dissenting opinion. The dissent framed the case as "another instance of an auto insurance customer who makes a coverage decision that results in monetary savings, and then sues the carrier after being injured and realizing that more or better coverage would have been available absent that cost-saving decision." Super. Ct. Slip Op. at 1 (Joyce, J., dissenting). The dissent applied the "Other Insurance" clause, limiting recovery of UIM coverage to the amount by which the first priority policy's coverage is exceeded by the coverage at the second priority level. Thus, according to the dissent, Appellant could not recover under the second priority Donegal–UIM policy because that policy had a coverage limit of $35,000, which did not exceed the $50,000 already recovered from the Nationwide–UIM policy, which was in the first priority.[9]

Donegal sought reargument *en banc*, which was granted. Upon reargument, the majority of the *en banc* panel adopted the former dissenting opinion with only minor revisions in September 2005. We will not restate the argument explained

---

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

(b) Multiple sources of equal priority.—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. 75 Pa.C.S. § 1733.

8. Creating a hypothetical case where a policyholder paid premiums for $1,000,000 of UIM coverage and recovered $15,000 from the vehicle in which she was riding, the panel concluded that it would be absurd to deny the injured access to the $1,000,000 of coverage for which premiums were paid because they had waived stacking. This conclusion is arguably erroneous because the policy language would provide for the victim to receive the difference between the higher second priority policy and the lower first priority policy, thereby allowing recovery of $985,000 ($1,000,000–$15,000).

9. The dissent also presented a strong argument in favor of the applicability of a stacking waiver in a single policy scenario. We will not address the logic of the argument, which we addressed in *Craley*, 586 Pa. 484, 895 A.2d 530.

above, but merely note that the majority concluded that the Appellant could not recover under the Donegal–UIM policy because she waived stacking and the "Other Insurance" clause applied to bar recovery.

Judge Ford Elliott, however, authored a dissent joined by Judges Bender and Panella, which serves as the basis of Appellant's current appeal.[10] The dissent argued that the case did not involve stacking but instead priority of recovery, under Section 1733. While acknowledging that the generic term "stacking" applies to the "cumulation of coverages," the dissent concluded that the legislature narrowed the definition through the language used in Section 1738 to apply only to "the sum of the limits for each motor vehicle *as to which the injured person is an insured.*"[11] *Generette,* 884 A.2d 266, 279 (Pa.Super.2005) (Ford Elliott, J., dissenting)(quoting 75 Pa. C.S. § 1738, emphasis in dissenting opinion). As noted by the dissent, the MVFRL, in turn, defined an "insured" as:

Any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

**10.**   Concurring with Judge Ford–Elliott's dissent, Judge Gantman issued a dissenting statement, based on a contractual analysis and conclusion that payment of the full UIM coverage limits would provide Appellant the benefit for which she bargained.

**11.**   § 1738. Stacking of uninsured and underinsured benefits and option to waive

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver.—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

75   Pa.C.S. § 1738(a), (b).

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S. § 1702. The dissent observed that the definition of "insured" did not include guest passengers in non-owned vehicles. *Generette*, 884 A.2d at 279. Therefore, because an "insured" as defined by the MVFRL would not include a guest passenger, Section 1738's stacking provision, including the waiver thereof, could not apply to the guest passenger scenario. Accordingly, the dissent concluded that coverage in this case was controlled by the statute relating to priority and not to stacking.

The dissent analogized the situation at bar to cases where this Court has forbade insurance companies from limiting the definition of insured to preclude coverage, *see Prudential Property & Casualty Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002). Although Donegal's policy has the effect of expanding rather than limiting the scope of the term "insured" from the definition provided by the MVFRL, the dissent noted that the result is the same: the preclusion of coverage that would otherwise be available under the definition of "insured" provided in the MVFRL. The dissent rejected the suggestion of the majority that Appellant was seeking stacked coverage for which she had elected not to pay: "She is not, however, seeking to stack UIM coverage. Rather, she is claiming the UIM benefits to which she is entitled as a class one insured pursuant to § 1733(a)(2)." *Generette*, 884 A.2d at 283.

After determining that the stacking waiver did not apply, the dissent considered the applicability of the "Other Insurance" clause in the Donegal policy, which provides "gap insurance" rather than "excess insurance." [12] The dissent observed

12. Former Chief Justice Cappy eloquently explained the difference between excess and gap insurance in his dissent in *Pennsylvania National Mutual Casualty Co. v. Black*:

The first category is referred to as "excess" UIM coverage, and aims to maximize the potential for full compensation to the injured insured. Thus, excess UIM gives to the injured insured a fund that supplements the fund provided by the tortfeasor's liability coverage, up to the injured insured's UIM policy limits or until he is compensated for his losses. The second category is referred to as "gap" UIM

that an *en banc* panel of the Superior Court in *Allwein v. Donegal Mutual Insurance Co.*, 448 Pa.Super. 364, 671 A.2d 744 (1996), *appeal denied*, 546 Pa. 660, 685 A.2d 541 (1996), concluded that the MVFRL requires excess UIM coverage because it defines an underinsured motorist using excess rather than gap insurance concepts: an underinsured motor vehicle is a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702. By framing the question of UIM status in terms of whether the tortfeasor's coverage is insufficient to cover the total injuries rather than whether the tortfeasor's coverage is less than the coverage provided by the injured's insurance, the court in *Allwein* concluded that the MVFRL required UIM insurers to provide excess rather than gap insurance. Indeed, the court in *Allwein* viewed UIM coverage as always being excess coverage "by its very nature" because "the insurer pays nothing unless and until the tortfeasor's coverage is exhausted, and then only if damages exceed the tortfeasor's insurance limits. To put it another way, underinsurance coverage always carries with it a 'deductible' of at least the amount of coverage required by a state's financial responsibility law." *Generette*, 884 A.2d at

> coverage. It aims to place the injured insured in the same position he would have occupied had the tortfeasor carried liability coverage in an amount that matches the injured insured's UIM coverage. Thus, gap UIM coverage gives to the injured insured a fund that fills in any gap between the tortfeasor's liability coverage and the injured insured's UIM policy limit.

*Pennsylvania Nat. Mut. Cas. Co. v. Black*, 591 Pa. 221, 916 A.2d 569, 583 (2007) (Cappy, C.J., dissenting) (citations omitted). In a footnote, Chief Justice Cappy provided the following example to distinguish the types of UIM insurance:

> Suppose that an injured insured is legally entitled to damages of $100,000; that the tortfeasor's liability insurance is $20,000; and that the injured insured's UIM coverage limit is $50,000. Under excess UIM coverage, the injured insured's total recovery is $70,000, with UIM coverage of $50,000 being paid in addition to the amount the insured receives under liability coverage, $20,000. Under gap UIM coverage, the injured insured's total recovery is $50,000, with the first $20,000 coming from the tortfeasor's liability coverage and the remaining $30,000, coming from the injured insured's UIM coverage, to fill in the gap between the tortfeasor's liability coverage and the injured insured's UIM coverage.

*Id.* at n. 1.

287, quoting *Allwein,* 671 A.2d at 757. The dissent in *Generette* acknowledged that *Allwein* involved the interaction of a bodily injury liability policy and a UIM policy, but found the logic utilized by the court also applies to this case involving the interaction of UIM policies of different priorities.

In September 2005, Appellant sought allowance of appeal from this Court asserting the following question:

> Did the Majority of the *en banc* Superior Court err in affirming the trial court opinion holding that a named insured cannot collect any UIM benefits based on a waiver of stacking and an "Other Insurance" clause in her Donegal policy even though her policy only insured one vehicle and her damages exceed the amount of available UIM coverage?

While Appellant's petition for allowance of appeal was pending, we decided *Craley v. State Farm Fire and Casualty Co.,* 586 Pa. 484, 895 A.2d 530 (2006), and held that the MVFRL permitted waiver of inter-policy stacking. Indeed, the opinion acknowledged the discussion of the *en banc* majority in the case at bar. *Id.* at 498 n. 13, 895 A.2d 530. Although we noted the priority of recovery issue raised by the dissent in *Generette,* we did not address the merits of that issue which was not raised in *Craley,* and indeed could not have been raised because the facts of that case did not involve a party injured while a guest passenger, but instead a party who sought uninsured motorist coverage purely through policies under which the victim was an "insured." *Id.*

We granted allowance of appeal in *Generette* and heard argument in March 2008. Appellant essentially adopts the reasoning presented by Judge Ford–Elliott in dissent below. She claims that we need not consider the validity of the stacking waiver because stacking does not apply in this case. Appellant argues that the stacking waiver language is limited to policies for which the injured person is an "insured" as defined by Section 1702 of the MVFRL, and thus does not apply to coverage received as a guest passenger. Appellant argues that Donegal, by expanding the definition of "insured" to include guest passengers, has drafted a policy that contra-

dicts the statutory language in violation of our decision in *Colbert*, 572 Pa. 82, 813 A.2d 747 (2002).

Appellant argues that this case is governed by the MVFRL's provision for priority of recovery, 75 Pa.C.S. § 1733. Therefore, she claims that after recovering from the Nationwide–UIM policy covering the vehicle in which she was riding when injured, she properly sought coverage from the policy under which she was an "insured," her own Donegal–UIM policy. Like the dissent in the Superior Court *en banc* decision, Appellant rejects the language of the "Other Insurance" clause of the policy as in conflict with the *en banc* Superior Court decision in *Allwein*, holding that the MVFRL requires "excess" rather than "gap" UIM insurance. She notes that the provision for excess coverage additionally facilitates the acknowledged purpose of UIM coverage, which is to compensate the injured. Appellant contends that she is not attempting to collect *gratis* coverage, but instead is trying to claim the coverage for which she paid premiums for years. If she is denied coverage, she claims that she will receive "nothing for something." Appellant's Brief at 13.

In contrast, Donegal claims that stacking does apply, and that under *Craley*, Appellant waived stacking in return for a reduction in her premiums. Rejecting the technical definition of the term "insured" as relied upon by Appellant, Donegal contends that stacking, and the waiver thereof provided in Section 1738, applies to those who recover insurance as guest passengers as well as those defined by the MVFRL to be "insureds." It notes that, in an opinion relied upon by this Court in *Craley*, the Insurance Commissioner found that policyholders receive a benefit from stacking in single-vehicle policies in guest passenger situations.[13] Accordingly, Donegal

13. The cited passage provides,

In her opinion, the Commissioner concluded that the stacking premium was lawful because she found that single-vehicle policy holders could obtain a real benefit from the provision of stacking in at least two situations: (1) where the insured is injured in his own vehicle insured with uninsured motorist coverage and is also covered as an insured under another policy providing uninsured motorist benefits, and *(2) where the individual is injured in a vehicle other than*

contends that in this case, that benefit was waived along with the other benefits of stacking. Donegal also invokes the interpretation of the term "insured" as used in the bad faith insurance statute of 42 Pa.C.S. § 8371, under which the term has been defined using its colloquial meaning, as describing anyone who obtains or is otherwise covered by insurance. Donegal also argues that unlike the limited definition in Section 1702, Donegal's policy specifically defines "insured" to include anyone occupying the insured car.

Donegal rejects Appellant's claim that the "Other Insurance" clause is invalid based upon *Allwein*. Instead, Donegal contends that the decision in *Allwein* did not contemplate a situation involving the priority of multiple UIM providers, but instead involved the interaction of the tortfeasor liability coverage and the primary UIM coverage, and held that the primary UIM had to be utilized as excess rather than gap coverage. It concluded that the court in *Allwein* was attempting to prevent the situation where an insured would receive no UIM coverage despite paying premiums for UIM coverage and having injuries that exceeded the coverage provided by the tortfeasor, if the tortfeasor's liability coverage exceeded the UIM coverage. Donegal contrasts the feared situation in *Allwein* with this case where Appellant received the benefit of excess insurance when the Appellant received the full amount of the tortfeasor's liability insurance and the full amount of the Nationwide–UIM policy. Donegal argues that she is not entitled to utilize her own secondary UIM as excess, especially where she has waived stacking.

Instead, Donegal argues that the "Other Insurance" clause moderates the impact of the stacking waiver by allowing the insured to receive at least the full amount of the UIM coverage limits, even if that is received in part through the first priority UIM policy. For example, if an insured recovered

> *his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has uninsured motorist coverage (such as an employer's vehicle).*
>
> Craley v. State Farm Fire and Cas. Co., 895 A.2d 530, 537 (2006), citing Leed v. Donegal Mutual Insurance Co., Docket Number MS96–10–055, February 23, 1998, (emphasis added).

$15,000 under the first priority UIM policy as a guest passenger, and had purchased $50,000 of UIM insurance under her own policy, then the insured would recover $35,000 from her own policy ($50,000–$15,000) despite the waiver of stacking, thus guaranteeing that she receive at least $50,000 in UIM coverage. Indeed, Donegal notes that in this case, Appellant actually received more UIM coverage under the Nationwide–UIM policy than she had contracted for under her own UIM policy. Accordingly, Donegal argues that Appellant received the benefit of her bargain, regardless of the source, and is not entitled to additional benefits that could have been purchased through the payment of the higher premiums for stacked coverage.

Donegal equates the setoff provision in the "Other Insurance" clause in this case with the setoff provision approved by this Court in *Pennsylvania National Mut. Cas. Co. v. Black*, 591 Pa. 221, 916 A.2d 569 (2007). In that case, this Court approved of a setoff provision capping the total amount recoverable under liability and uninsured motorist subsections of a single policy. The victim guest passenger in *Black* claimed $100,000 of liability coverage due to the negligence of the driver of the car insured by the policy and $100,000 of UIM coverage due to the negligence of a second driver, despite the provision in the policy requiring any amount paid under the liability portion of the policy to be deducted from the coverage limit of the UIM coverage. We rejected the argument that the setoff provision violated public policy and instead noted that the insurance company had complied with the MVFRL's requirement that it offer UIM coverage and observed that there was no provision setting a floor for UIM coverage. Donegal argues that the "Other Insurance" clause in the policy at issue is likewise valid and not against public policy, and indeed, supports the public policy underlying the enactment of the MVFRL: to reduce the spiraling cost of insurance premiums found by the legislature to have been occurring when the MVFRL became law. Finally, Donegal argues that we are bound to apply the plain meaning of the unambiguous policy clause, which requires the subtraction of the amount

received from other UIM sources from the coverage limit of the Donegal–UIM policy, where, as here, stacking was waived.

■ Upon review, we recognize that the questions presented, whether stacking applies in a guest passenger situation under the MVFRL and whether the "Other Insurance" clause is against public policy, are pure questions of law for which our scope of review is plenary and our standard of review is *de novo*. *See Black*, 916 A.2d at 578. We first review the process of UM/UIM recovery under the MVFRL. UM/UIM coverage is triggered when the tortfeasor's liability coverage is not sufficient to cover the injuries incurred in an accident. Once implicated, the provision of underinsured motorist coverage is governed by Section 1733, *supra* note 7. As occurred in this case, the "policy covering a motor vehicle occupied by the injured person at the time of the accident" is in first priority ("First Priority UIM policy"), regardless of whether the injured person would otherwise be an "insured" under the policy. 75 Pa.C.S. § 1733(a)(1). In this case, the First Priority policy is Nationwide–UIM, which did not cover all the injuries suffered by Appellant. If the injuries exceed the coverage of the First Priority UIM policy, then the injured person may seek recovery under a "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured" ("Second Priority UIM policy"). 75 Pa.C.S. § 1733(a)(2). In this case, the Second Priority UIM policy is the Appellant's own Donegal–UIM policy.

Donegal, however, argues that Appellant should not recover under the Donegal–UIM policy because she waived stacking. As discussed in the arguments above, the application of the stacking waiver in this case turns on whether the use of the term "insured" in the stacking and stacking waiver section, 75 Pa.C.S. § 1738, is limited to the definition of "insured" as provided in the MVFRL's definitions section, 75 Pa.C.S. 1702, which does not include guest passengers. If the term in Section 1738 is limited by Section 1702, then Section 1738, and the relevant provision relating to the waiver of stacking, does not apply to injuries received as a guest passenger in a vehicle because guest passengers are not "insureds."

■ We conclude that we are bound to apply the specific definition of "insured" provided by the General Assembly in Section 1702 of the MVFRL to the use of the term in Section 1738, absent any indication of the legislature that it should not be applied.[14] Moreover, we reject Donegal's attempt to invoke the definition of "insured" as developed through 42 Pa.C.S. § 8371, because that section is simply not germane to the MVFRL, and should not be read to supplant the MVFRL's own definitional section, 75 Pa.C.S. § 1702, as applied to the MVFRL's stacking waiver section, 75 Pa.C.S. § 1738. Finally, although we gave deference to the Insurance Commissioner's interpretation of the benefits of interpolicy stacking in *Craley*, we did not base our holding in *Craley* on the Insurance Commissioner's consideration of stacking in relation to guest passengers. While we defer in many respects to the views of the Insurance Commissioner in interpreting the MVFRL, we are bound to interpret the stacking waiver in Section 1738 to apply only to "insureds" as defined by Section 1702, which does not include guest passengers.

■ While we hold that Appellant's recovery under the Donegal–UIM policy is not barred by her waiver of stacking, we must still consider whether it is prohibited by the "Other Insurance" clause included in the Donegal–UIM policy. Appellant does not assert that the policy clause is ambiguous. Instead, both parties agree that the clear language of the policy, as discussed above, would bar recovery by Appellant because her $35,000 of coverage under the Donegal–UIM policy does not exceed the $50,000 of coverage she received from the Nationwide–UIM policy, insuring the car in which she was injured. Instead, Appellant claims that the clause violates the public policy of the MVFRL requiring excess

14. We acknowledge, however, that Section 1733(a) suggests that guest passengers are covered by most insurance policies, given that the first priority UIM coverage is the policy covering the vehicle occupied, regardless of whether the injured person is an insured. We refuse to use this implication, however, to override the specific definition of "insured" in Section 1702, which does not include quest passengers. As we are bound by the statute as written, we leave amendment of the MVFRL to the legislature to clarify what is required of insurers concerning guest passengers.

rather than gap UIM coverage as determined by the Superior Court in *Allwein.*

■ We have detailed the heavy burden required to declare an unambiguous provision of an insurance contract void as against public policy: "Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Colbert,* 813 A.2d at 750. "As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy" *Id.* (internal citation omitted).

■ While we are wary to declare contractual language invalid as against public policy, we are obliged to find contractual language to be contrary to public policy when it violates statutory language: "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Colbert,* 813 A.2d at 751 (internal citation omitted).

■ In this case, we must consider whether the "Other Insurance" clause violates the asserted public policy mandating that UIM coverage be excess rather than gap coverage. As suggested in a footnote in *Black,* we agree with the Superior Court's decision in *Allwein,* that the structure of the MVFRL's definition of an underinsured motorist requires the provision of excess rather than gap underinsured motorist coverage because the definition is framed in terms of the total of the injured's losses rather than the injured's own insurance coverage limits. We additionally acknowledge that the General Assembly has not seen fit to alter the language of the MVFRL since the Superior Court's interpretation over a decade ago in *Allwein.*

We acknowledge, however, that the decision in *Allwein* is not directly applicable to the case at bar because *Allwein* addressed the interaction between a tortfeasor's liability policy and an UIM policy, rather than the two UIM policies present-

ly at issue. We conclude, however, that this is a distinction without a difference. We fail to understand why the public policy of providing excess rather than gap UIM insurance would cease to apply in a case involving two UIM policies. Although the MVFRL's definition of underinsured motorist speaks in terms of the inability of the *liability* insurance to cover the injured's losses and does not address the failure of first priority UIM insurance to cover the injured's losses, we cannot ignore that the priority of recovery section, Section 1733, which directly addresses secondary priority UIM coverage, includes no language creating gap insurance. Instead, the language triggering gap insurance is only in the policy, which cannot conflict with the MVFRL.[15] To utilize Donegal's distinction with *Allwein*, we would be required to alter dramatically the MVFRL's provision of excess UIM coverage at the second level of UIM coverage without any direction by the General Assembly. We will not read that policy shift into the language until the legislature so provides.

Similarly, we reject Donegal's claims that this case is controlled by our recent decision in *Black*, which we find plainly distinguishable. In *Black*, the plaintiffs argued that a policy violated the Superior Court's decision in *Allwein* that the MVFRL required excess rather than gap insurance. In *Black*, however, we concluded that the policy provision at issue did not violate the provision of excess UIM insurance because it addressed an internal setoff provision that required the reduction of coverage under the UIM portion of a policy by

**15.** With all due respect to the responsive opinion of Justice Saylor, we do not declare that Section 1733 "forclose[s] other-insurance limitations." Concurring and Dissenting Op. by Justice Saylor at 1193. Instead, we suggest that it is silent on the issue. We merely note that the language of Section 1733 does not counter the UIM definition, which, as discussed in *Allwein*, supports excess coverage rather than gap coverage. If the legislature would prefer to endorse gap coverage in the event of multiple UIM policies and thus negate the *"de facto"* stacking suggested by the responsive opinion as a consequence of this opinion, it may do so. *Id.* at 4. However, that determination is a legislative and not a judicial decision. We join our distinguished colleague in calling for the legislature to fill in the gaps and discrepancies in the MVFRL to provide the bench and bar, as well as the insurers and insureds, with a clearer understanding of the intended interaction of the various provisions within these policies.

any recovery obtained from the liability portion of the *same* policy. Accordingly, the setoff provision at issue in *Black* merely capped total recovery under any single policy. We noted that if the insureds had desired a higher cap, they could have contracted for that coverage and paid a higher premium. Moreover, we emphasized that the injured party failed to cite any provision of the MVFRL in conflict with the setoff in *Black*. Conversely, unlike in *Black* this case addresses the interaction between two UIM policies, a situation specifically addressed by the MVFRL in Section 1733. As stated earlier, we cannot, consistent with basic rules of statutory construction, read Section 1733 as altering the provision of excess, rather than gap, UIM coverage.

In addition to the definition of underinsured motorist, we also consider the guiding purposes of the MVFRL. We discussed two of the purposes in *Black*, and noted, "it is beyond cavil that one purpose of the underinsured motorist provisions of the MVFRL is to provide coverage to those injured by a tortfeasor who lacks adequate coverage." *Black*, 916 A.2d at 580. Conversely, we have emphasized the cost containment purpose of the MVFRL: "[W]hile cost containment is not the only objective of the statute, it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of this objective." *Id.*, quoting *Progressive N. Insur. Co. v. Schneck*, 572 Pa. 216, 813 A.2d 828, 832 (2002). Acknowledging both policies, we observed that as a court, "Our role is not to weigh the benefits of these two competing public policies, but rather to determine whether the [insurance policy] provision violates either public policy." *Black*, 916 A.2d at 580. We conclude that the "Other Insurance" policy provision directly violates the language of MVFRL providing for excess rather than gap insurance and the public policy of providing coverage to those injured by a tortfeasor lacking adequate coverage. Moreover, we note that the cost containment provision will not be violated because second priority coverage will only be implicated in the limited situations where the victim's

injuries exceed both the tortfeasor's liability insurance and the first priority insurance, thus creating a substantial "deductible" prior to any obligation to provide UIM coverage at the second priority level. Additionally, in our view, this decision merely provides Appellant with the coverage that she purchased. She paid full premiums for $35,000 coverage to protect her in the event that she was injured by an underinsured driver; she now seeks only to recover that amount. To hold otherwise would provide insurer with a windfall benefit of avoiding paying coverage based on a policy provision at odds with the MVFRL.

Therefore, we conclude that the "Other Insurance" clause violates the public policy as expressed in the MVFRL of requiring excess rather than gap UIM coverage. Accordingly, we reverse the decision of the Superior Court affirming the grant of summary judgment to Donegal, and remand to the trial court for further proceedings in accordance with this opinion.

Chief Justice CASTILLE, Justice TODD and Justice McCAFFERY join the opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring and dissenting.

I join the majority's holding and general reasoning concerning the limited application of inter-policy stacking under Section 1738 of the Motor Vehicle Financial Responsibility Law and associated waivers. On this point, I note only that, in the absence of a decision by this Court invalidating the household vehicle exclusion commonly included in the uninsured and underinsured motor vehicle provision of automobile insurance policies,[1] the concept of inter-policy stacking, as clarified by

1. I recognize that there is an appeal pending before this Court questioning whether Section 1738(a)'s proviso that "[t]he limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured" precludes the application of the household vehicle exclusion.

the majority opinion, should have limited application.[2]

I differ, however, with the majority's decision to invalidate the "other-insurance" clause contained in Donegal's policy. The majority offers four reasons in support of its decision. First, the majority invokes the rationale of the Superior Court's decision in *Allwein v. Donegal Mutual Insurance Company*, 448 Pa.Super. 364, 671 A.2d 744 (1996), to support its conclusion that second-priority UM/UIM coverage must function as excess coverage relative to first-priority UM/UIM coverage. *See* Majority Opinion, *op.* at 522–23, 957 A.2d at 1191. *Allwein's* reasoning, however, is specifically addressed to the relationship between *liability* insurance and UM/UIM coverage. Indeed, the rationale is centered on the statutory definition of an "underinsured motor vehicle" as "[a] motor vehicle for which the limits of available *liability insurance* and self-insurance are insufficient to pay losses and damages." *Allwein*, 448 Pa.Super. at 370–71, 671 A.2d at 747–48 (quoting 75 Pa.C.S. § 1702) (emphasis added). Therefore, while *Allwein's* rationale that UM/UIM coverage functions as excess coverage relative to liability coverage may be persuasive, on its terms it simply does not extend to the present circumstances involving coordination of excess coverage as between the first- and second-priority levels.

Second, the majority attempts to address the above weakness by asserting that the priority of recovery provisions of

See *Erie Ins. Exchange v. Baker*, 598 Pa. 1, 952 A.2d 1163 (2008) (*per curiam*).

2. This is so, since the household vehicle exclusion generally forecloses coverage in circumstances in which the claimant is an "insured" under the relevant policy but is injured in another household vehicle (*i.e.*, one as to which the claimant is also an "insured") that is not covered under that policy. *See generally Prudential Property and Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 86, 813 A.2d 747, 749 (2002). This seems to me to be the most common scenario in which the claimant will be a statutory "insured" under two policies issued by separate insurers, thus implicating inter-policy stacking. While inter-policy stacking, as recognized in *Craley*, also is implicated with respect to separate policies issued by the same insurer, in this scenario the insurer will have notice of and will have received premiums pertaining to the independent policies, and therefore, the application of inter-policy stacking seems less problematic.

Section 1733 of the MVFRL foreclose other-insurance limitations. *See* Majority Opinion, *op.* at 522–23, 957 A.2d at 1191.[3] Section 1733, however, by its terms, functions as a "priority of recovery" provision which operates "[w]here multiple policies apply." 75 Pa.C.S. § 1733. As this Court has previously explained, the statute on its face is subordinate to contractual provisions defining the extent of coverage in the first instance. *See Burstein v. Prudential Property and Cas. Ins. Co.*, 570 Pa. 177, 186 n. 7, 809 A.2d 204, 209 n. 7 (2002) (stating that, "[w]hile Section 1733 contemplates that UM and UIM coverage may be portable in some instances, *it does not suggest that UM or UIM coverage would extend where the coverage has been specifically excluded*" (emphasis added)); *accord Colbert*, 572 Pa. at 89 n. 3, 813 A.2d at 751 n. 3 (same). Therefore, Section 1733 cannot be read as foreclosing contractual exclusions or limitations that do not otherwise violate the terms or clear policy of the MVFRL. *See id.*

Third, the majority references a "substantial deductable" arising from the presence of higher priority coverage, reasoning that this mitigates the application of the "cost-containment" rationale underlying the MVFRL. *See* Majority Opinion, *op.* at 524–25, 957 A.2d at 1192. I do not believe, however, that the courts have the means or expertise to quantify the number of occurrences in which the "deductable" attributable to liability and primary UM/UIM insurance will moot the liability of secondary UM/UIM insurance carriers or the impact of such occurrences on the industry costs associated with the voiding of the other-insurance clause.[4]

---

3. In response to the above, the majority clarifies that it is pointing only to Section 1733's silence. *See* Majority Opinion, *op.* at 523 n. 15, 957 A.2d at 1191 n. 15. Whether by the statute's silence or otherwise, however, the text of the Majority Opinion plainly relies on Section 1733 to bolster its position in light of the fact that *Allwein's* statutory-construction rationale, on its terms, simply does not apply. *See* Majority Opinion, *op.* at 522–24, 957 A.2d at 1191–92. I have substantial reservations about discerning overarching public policy based upon legislative silence.

4. The Insurance Department, however, as the regulatory body charged with the administration of the MVFRL, has been afforded tools to support such judgments. *See* 75 Pa.C.S. §§ 1799.5–1799.6 (empowering the Department to monitor insurers' profits, undertake market

Finally, the majority reasons that an insured must be provided with coverage for which she paid to avoid a "windfall benefit" to the insurer. *See* Majority Opinion, *op.* at 525, 957 A.2d at 1192. However, there is no evidence that premiums charged by Donegal were not calculated with reference to its liability exposure under the policy, as they should be. Thus, I differ with the position that Ms. Generette's premium payments encompass reimbursement for the expanded measure of coverage afforded upon the majority's decision to strike a plainly applicable contractual limitation on that coverage. *See generally Newkirk v. United Services Auto. Ass'n,* 388 Pa.Super. 54, 60, 564 A.2d 1263, 1266 (1989) (observing that persons pay only for coverage provided for in an insurance policy).

From a broader perspective, the majority opinion appears to accept the idea that, in Section 1738, the statutory provision specifically designed to regulate stacking of uninsured and underinsured motorist benefits, the Legislature did not intend to mandate stacking *per se* in the present scenario, *i.e.,* where two policies apply because the injured person is covered as a guest-passenger under the accident-vehicle policy and is also insured under her own policy pertaining to a non-accident vehicle.[5] The effect of the majority's decision to invalidate the other-insurance clause, however, is to implement a *de facto,* mandatory stacking rule pertaining to this scenario.

I have previously expressed the view that the MVFRL was experimental legislation, designed to further cost control in the insurance industry in recognition of spiraling costs, while retaining core remedial objectives of the prior regulatory scheme. Further, I believe that, in this undertaking, the Legislature left substantial gaps to be filled by the Insurance Department in its core administrative role. *See Burstein,* 570 Pa. at 219–20, 809 A.2d at 230 (Saylor, J., dissenting). As relevant to the present circumstances, the Insurance Depart-

studies and random field surveys and pursue other forms of investigation to ensure that rates and premiums charged are lawfully applied).

**5.** Under the majority's rationale, Section 1738 is not concerned with guest-passenger scenarios where the injured person is not an "insured" under the statutory definition contained in Section 1702. *See* Majority Opinion, *op.* at 520–21, 957 A.2d at 1189–90.

ment has apparently required the industry to extend UM/UIM coverage to the guest-passenger scenario, but also has recognized a concomitant offset via an other-insurance proviso. *See, e.g.,* 31 Pa.Code § 63.2(a) & Exhibit C (reflecting the base uninsured motorist coverage required to be offered in Pennsylvania by reference to a national standard form).[6] Thus, under the regulatory scheme, an adjustment of liabilities has been permitted by which the exposure of insurers providing UM/UIM coverage associated with non-accident vehicles may be mitigated by payments from insurers of accident vehicles. Concomitantly, injured persons are provided with at least a full measure of UM/UIM benefits, defined according to the limits of the policy for which they (or their families) have paid a premium.

Notably, neither the extension of UM/UIM coverage to guest passengers (here, under the Nationwide policy) or the portability aspect of UM/UIM insurance permitting it to follow the person outside of insured vehicles (which, here, implicated the coverage by Donegal) is expressly delineated within the MVFRL. With regard to the former, just as Section 1738 centers on the concept of "insureds" (as named insureds and household members), thus omitting any particular reference to the guest-passenger paradigm, so does the core concept of uninsured and underinsured motorist coverage under the Motor Vehicle Financial Responsibility Law. This is reflected in Section 1731, in which the Legislature required the following explanations in rejections of uninsured and underinsured motorist coverage:

> Uninsured coverage protects *me and relatives living in my household* for losses and damages suffered if injury is

**6.** This regulation was promulgated pursuant to the Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1 (codified as amended at 40 P.S. § 2000). Although it expressly pertains to uninsured motorist coverage, I discern no salient policy that would distinguish UIM from UM coverage in terms of the extension of coverage to guest passengers or the "other insurance" limitation. *Accord Burstein,* 570 Pa. at 221, 809 A.2d at 231 (Saylor, J., dissenting). Moreover, the sanction of the Insurance Department is also reflected in its approval of policies issued in Pennsylvania, such as Donegal's, containing the clause.

caused by the negligence of a driver who does not have any insurance to pay for losses and damages.

* * *

Underinsured coverage protects *me and relatives living in my household* for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages.

75 Pa.C.S. § 1731(b), (c) (emphasis added).[7] With respect to the portability aspect, as previously noted, this Court has rejected the idea that UM/UIM insurance associated with non-accident vehicles must universally follow the person of the insured. *See, e.g., Burstein*, 570 Pa. at 186, 809 A.2d at 209 ("UM and UIM benefits do not necessarily 'follow the person' in the same manner as first party benefits."). Indeed, *Burstein* stands squarely for the proposition that the insurance industry may impose reasonable limitations on portability that are in furtherance of the legislative goal of cost containment. *See id.* at 186–87, 809 A.2d at 209–10.[8]

7. Since the central concept of UM and UIM insurance centers on "insureds" (*i.e.* the named insured and defined household members), it is not surprising that the associated concept of UM/UIM stacking is also framed upon the same concept.

8. I realize that this Court invalidated an other-insurance exclusion contained in the uninsured motorist provisions of an automobile policy in *Harleysville Mutual Casualty Company v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). However, since *Blumling* both the statutory and decisional law have undergone radical revisions. *See Burstein*, 570 Pa. at 211–18, 809 A.2d at 223–29 (Saylor, J., dissenting) (describing such revisions). Indeed, as developed in my responsive opinion in *Burstein*, this Court has overturned the result of *State Farm Mutual Automobile Insurance Company v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978) (invalidating a household vehicle exclusion), in a subsequent line of cases emphasizing the cost-control objective of the MVFRL over the remedial-purposes objective which was afforded predominance in both *Williams* and *Blumling*. *See Burstein*, 570 Pa. at 211–18, 809 A.2d at 225–29 (Saylor, J., dissenting) (citing, *inter alia, Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994)); *accord Colbert*, 572 Pa. at 91–95, 813 A.2d at 753–55. Significantly, in this regard, *Williams'* central rationale and holding was expressly grounded on *Blumling's*. *See Williams*, 481 Pa. at 140–43, 392 A.2d at 287 (explaining, *inter alia,* that "[t]he language in [*Blumling*] is applicable to the 'household' exclusion in this case, as it was to the 'excess insurance' exclusion in [*Blumling*]").

In summary, other than in terms of priority of recovery where contractual terms apply, I do not believe that the Legislature has addressed the other-insurance scenario in the UM/UIM context. Further, it appears that this substantial void in the statutory scheme is being reasonably addressed in the administration of the regulatory scheme, in furtherance of both the cost-containment and remedial purposes of the MVFRL. *Accord Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347, 648 A.2d 755, 760 (1994) (relying, in part, on Insurance Department regulations and approval in rejecting a public-policy challenge to policy provisions). Under that scheme, coverage is provided to the full extent of the limits selected by an insured (or her named insured), albeit that the source of all or part of the payment may be the insurer of the accident vehicle. The policy concerns at issue in the allowance of such an offset are, in my view, at least mixed, and do not require this Court's intervention. *See generally id.* at 347–48, 648 A.2d at 760 (delineating the very limited range of compelling circumstances in which it is appropriate for a court to invalidate contractual provisions based on public policy). If anything, I believe that the substantial gaps in the MVFRL may implicate non-delegation concerns, *see* PA. CONST. art. II, § 1, given the degree to which legislative-type decision making appears to be falling to the Department and/or the courts, and the pervading confusion and uncertainty regarding basic coverage issues. *Cf. Insurance Federation of Pennsylvania, Inc. v. Commonwealth, Dep't of Ins.*, 585 Pa. 630, 889 A.2d 550 (2005) (invalidating Department regulations requiring mandatory arbitration of UM/UIM coverage disputes on non-delegation grounds).

Justice EAKIN, dissenting.

I respectfully dissent from the majority's reversal of the Superior Court's order. I believe Plaintiff maintained a right to stack coverage from the Donegal and Nationwide policies,[1] and Plaintiff, as an "insured," waived this right.

As such, I do not believe that *Blumling* must be regarded as controlling precedent relevant to the present statutory scheme.

1. *See* 75 Pa.C.S. § 1738(a); *see also id.*, § 1702 (defining "insured"); *Craley v. State Farm and Casualty Company*, 586 Pa. 484, 895 A.2d 530, 540 (2006) (insured can waive both intra and inter-policy stacking).

Section 1738(b) of the MVFRL provides "a *named insured may waive* coverage providing stacking of [UM/UIM] coverages in which case the limits of coverage available under the policy for an *insured* shall be the stated limits for the *motor vehicle as to which the injured person is an insured.*" 75 Pa.C.S § 1738(b) (emphasis added). As the majority noted, Plaintiff is a class one, named insured under the Donegal policy. *See* Majority Op., at 513–15, 957 A.2d at 1185–86. As a named insured under her own policy, Plaintiff could waive her stacking rights. 75 Pa.C.S. § 1738(b).

In *Craley,* this Court noted "single-vehicle policy holders ... obtain a real benefit from ... stacking ... where the individual is injured in vehicle other than his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has [UIM] coverage...." *Id.,* at 537. Here, Plaintiff received a benefit from the non-owned vehicle policy—Nationwide indemnified her $50,000 in UIM benefits—she was an insured under this policy as well, but she remained an insured who waived her inter-policy stacking rights; Plaintiff's coverage limits are thus the stated limits in the Nationwide policy. *See* 75 Pa.C.S. § 1738(b).

I would not hold the "other insurance clause" void as against public policy; it does not contradict the MVFRL, which requires excess coverage. In *Pennsylvania National Mutual Casualty Company v. Black,* 591 Pa. 221, 916 A.2d 569 (2007), we explained:

It is not clear whether the MVFRL mandates the offer of [UIM] coverage for guest passengers.... While the MVFRL does not define the class of persons for which [UIM] coverage must be offered, it does inform those desiring to waive ... coverage that "[UIM] coverage protects *me and relatives living in my household* for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages" 75 Pa.C.S. § 1731 (emphasis added). This statement makes no reference to guest passengers.

Absent any statement by the legislature requiring a minimum of [UIM] coverage to guest passengers ... we are unwilling to declare the unambiguous set-off provision in this policy void as against public policy.

*Id.,* at 581 n. 8. The majority resolves this matter by characterizing Plaintiff as a "guest passenger." Majority Op., at 521, 957 A.2d at 1190. Since it is unclear whether the MVFRL *mandates* the offer of UIM coverage for guest passengers, a violation of an expressed public policy is not apparent. Thus, the heavy burden to declare the "other insurance clause" void is not met. *See id.,* at 1190 (citing *Prudential Property & Casualty Insurance Company v. Colbert,* 572 Pa. 82, 813 A.2d 747, 750 (2002)).

Further, a central policy behind "other insurance clauses" following the MVFRL's enactment was to keep insurance premiums low while providing sufficient coverage to the insured. *See id.,* at 18. We have often emphasized the propriety of the cost-containment policy underlying the enactment of the MVFRL: " 'The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways.' " *Black,* at 580 (quoting *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994)).

Here, the "other insurance clause" guaranteed Plaintiff would receive sufficient coverage as guaranteed by her policy and enabled Donegal to offer reduced premiums. *See* 75 Pa.C.S. § 1738(c) ("Each named insured purchasing [UIM] coverage ... shall be provided the opportunity to waive the stacked limits of coverage.... The *premiums for an insured who exercises such waiver shall be reduced* to reflect the different cost of such coverage.") (emphasis added). As a result, the provision furthered the cost-containment policy underlying the MVFRL. Based on the foregoing, I would hold the "other insurance clause" is enforceable and precludes recovery here.

Accordingly, I would affirm the Superior Court's order.