J-S32016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAY KING AND CORA LABAR | : | |
| | : | |
| Appellant | : | No. 648 EDA 2020 |

Appeal from the Order Entered January 27, 2020
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  No. 2019-06937

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                                      Filed: January 13, 2021

Appellants, Jay King and Cora Labar, appeal from the order entered in

the Monroe County Court of Common Pleas, which granted the motion for

judgment on the pleadings of Appellee, Erie Insurance Exchange ("Erie"), in

this declaratory judgment action.  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as

follows:

> The underlying facts of this case involve a motor vehicle
> accident and subsequent claim of uninsured motorist ("UM")
> benefits.[1]   On August 30, 2016, Jay King (hereinafter
> "[Appellant] King") was operating a 2005 Peterbilt Model
> 379 truck in which Cora Labar (hereinafter "[Appellant]
> Labar") was a passenger.  [Appellant] Labar is the niece of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Throughout this disposition, we will refer to uninsured motorist benefits as
"UM" benefits and underinsured motorist benefits as "UIM" benefits.

[Appellant] King's paramour, Cynthia Mosier, and was residing at their shared home at the time of the accident. On the date in question, the Peterbilt truck was struck head-on by a drunk driver on State Road 209 in Smithfield Township, Monroe County, Pennsylvania. The other vehicle's operator, Jose A. Ramirez, did not have insurance at the time of the accident.

[Appellant] King owned the Peterbilt truck which was insured under a commercial auto policy issued by Sentry Select. [Appellant] King was not personally listed as an insured person under the Sentry Select policy, but rather the corporate entity "Night Train Express, Inc." was named. However, [Appellant King] and Ms. Mosier did have a shared automobile insurance policy with Erie for a personal vehicle through [Erie] with an identification number of Q052313453. [Appellants] initially made a claim for UM benefits under the Sentry Select policy. Once those benefits were exhausted, [Appellants] made a UM claim under the Erie policy. [Appellants] may have also sought UM benefits from an additional Erie Insurance policy which is not subject to these proceedings. The Erie policy [at issue] included a stacking waiver which was executed by [Appellant] King in exchange for lower insurance premiums.

On September 5, 2019, [Erie] filed a Complaint for Declaratory Judgment in this matter. [Erie] argues that [Appellants] are barred from receiving UM coverage due to either the Household Exclusion in the insurance policy or because stacking benefits are inapplicable here.

(Trial Court Opinion, filed January 27, 2020, at 1-2).

Specifically, in Count I of its complaint, Erie alleged Appellants were barred from coverage under the "household exclusion," which provides:

**EXCLUSIONS – What We Do Not Cover**

This insurance does not apply to:

\* \* \*

4. damages sustained by "**anyone we protect**" while:

- 2 -

a. "**occupying**" or being struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for Uninsured or Underinsured Motorists Coverage under this policy. This exclusion does not apply when "**anyone we protect**" is "**occupying**" or struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**" that is insured for Uninsured or Underinsured Motorists Coverage under any other Erie Insurance Group policy; or

b. "**occupying**" or being struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

*Exclusion 4.a applies only when the STACKED option is selected. Exclusion 4.b applies only when the UNSTACKED option is selected*.

(Complaint, filed 9/5/19, Exhibit A at Uninsured/Underinsured Motorist Coverage Endorsement, p.3; R.R. at 39a) (emphasis in original).[2]

---

[2] Additionally, the Uninsured/Underinsured Motorist Coverage Endorsement provides a definitions section stating: "*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the GENERAL POLICY DEFINITIONS section of the policy*." (***Id.*** at p.1; R.R. at 37a) (italics in original). The endorsement does not contain a specific definition of the word "you." Under the "General Policy Definitions" section,

"**You**," "**your**" or "**Named Insured**" means the "**Subscriber**" identified as a Named Insured on the "**Declarations**" and others identified as Named Insured(s) on the "**Declarations**." Except under the RIGHTS AND DUTIES—GENERAL POLICY CONDITIONS Section, these words include the spouse of the "**Subscriber**" identified as a Named Insured on the "**Declarations**," provided the spouse is a "**resident**."

Erie claimed it provided "unstacked" coverage at the time of the accident based on Appellant King's execution of a stacking waiver. The stacking waiver electronically signed by Appellant King on May 23, 2014 provides:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(*Id.* at Exhibit A at Uninsured Coverage Limits—Stacking Waiver; R.R. at 55a).

In Count II of its complaint, Erie alleged that even if the household exclusion did not bar coverage, Appellant King's execution of the stacking waiver barred coverage. Initially, Erie maintained that neither Appellant King nor Appellant Labar was a named insured or relative of a named insured on the Sentry Select policy. Thus, Erie claimed Appellants did not qualify as "insureds" as defined at 75 Pa.C.S.A. § 1702 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), such that the concept of "stacking" UM benefits would not even apply in this case. To the extent stacking is implicated, Erie alleged that Appellant King's execution of a valid stacking waiver precluded "inter-policy" stacking.[3]

---

(*Id.* at General Policy Definitions, p.3; R.R. at 20a) (emphasis in original).

[3] This Court has recently explained:

Appellants filed an answer and new matter on November 4, 2019. Appellants claimed the household exclusion is unenforceable under Pennsylvania law. Even if that exclusion is valid, Appellants claimed it would not apply to Appellant Labar because neither she nor her relative owned the vehicle involved in the accident for purposes of the exclusionary language. Appellants further insisted the stacking waiver pertained only to "intra-policy" stacking and not "inter-policy" stacking.

Erie filed a reply to new matter on November 19, 2019. On December 6, 2019, Erie filed a motion for judgment on the pleadings, to which Appellants responded on January 2, 2020. On January 27, 2020, the court granted Erie's motion for judgment on the pleadings. Appellants timely filed a notice of appeal on February 7, 2020. That same day, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied on February 27, 2020.

---

> The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy. There are two types of stacking, **intra**-policy and **inter**-policy. Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance. Inter-policy stacking…is the addition of coverages for vehicles insured under different policies of insurance.

**Erie Insurance Exchange v. Petrie**, ___ A.3d ___, 2020 PA Super 268, 2020 WL 6777174 at *1 n.2 (Pa.Super. filed Nov. 18, 2020) (internal citation and quotation marks omitted) (emphasis in original).

Appellants raise the following issues for our review:

Whether the trial court committed an error of law in failing to follow our Supreme Court's holding in **Generette v. Donegal Mut. Ins. Co.**, [598 Pa. 505,] 957 A.2d 1180 [(2008)], in finding that [Appellants] were improperly seeking to stack [UM] benefits between a policy covering them as guest passengers and a policy covering them as "insureds."

Whether the trial court committed an error of law in concluding that the "household vehicle exclusion" was able to be used to circumvent the statutory requirements of 75 Pa.C.S.A. § 1731(b) regarding how [UM] benefits must be rejected?

Whether the trial court committed an abuse of discretion or an error of law in determining that even though [Appellant] Labar did not occupy a vehicle owned or leased by her or a relative when she was injured, the household vehicle exclusion still applied to deny her [UM] motorist benefits?

(Appellants' Brief at 3-4).

Our standard and scope of review in this matter are as follows:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a *demurrer*. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which

- 6 -

were specifically admitted.

> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 116 A.3d 87, 91 (Pa.Super. 2015), *appeal denied*, 633 Pa. 789, 128 A.3d 221 (2015) (some internal citations omitted). "Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*." ***Id.***

In their first issue, Appellants argue the trial court failed to apply ***Generette*** to the facts of this case. Appellants assert the Pennsylvania Supreme Court held in ***Generette*** that a waiver of stacking does **not** apply to injuries someone received as a guest passenger in a vehicle. Appellants claim that because they were not insured under the Sentry Select policy, they received limited benefits under that policy as guest passengers, pursuant to 75 Pa.C.S.A. § 1733. Appellants contend the trial court improperly decided Appellants were trying to stack UM benefits, which they could not do based on Appellant King's execution of the stacking waiver. Appellants insist the trial court's analysis was flawed because Appellants could not actually "stack" any benefits received under the Erie policy with benefits received under the Sentry Select policy, where Appellants were only guest passengers in the vehicle involved in the accident. Appellants conclude the stacking waiver is inapplicable in this case, and this Court should reverse the order granting

Erie's motion for judgment on the pleadings and remand for further proceedings. For the following reasons, we agree with some of Appellants' contentions.

To begin, Section 1733 of the MVFRL provides:

**§ 1733. Priority of recovery**

**(a) General rule.**—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

**(b) Multiple sources of equal priority.**—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution *pro rata* from any other insurer for benefits paid and the costs of processing the claim.

75 Pa.C.S.A. § 1733. Section 1738 of the MVFRL provides, in pertinent part, as follows:

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

**(a) Limit for each vehicle**.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver**.—Notwithstanding the provisions of

subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c)   More than one vehicle**.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d)   Forms**.—

(1)   The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

### UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured and Date

*   *   *

**(e)   Signature and date**.—The forms described in subsection (d) must be signed by the first named insured and dated to be valid.  Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. § 1738(a)-(e).[4]  Additionally, the MVFRL defines an "insured" as: "Any of the following: (1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.  (2) If residing in the household of the named insured: (i) a spouse or other relative of the named insured; or (ii) a minor in the custody of either the named insured or relative of the named insured."  75 Pa.C.S.A. § 1702 (definitions).

In **Generette, supra**, the appellant suffered injuries while riding as a guest passenger in a motor vehicle that collided with a third-party tortfeasor's vehicle.  The appellant recovered $25,000.00 under the third-party tortfeasor's liability insurance policy, and $50,000.00 from Nationwide Insurance Company, which provided UIM benefits for the car in which she was a guest passenger.  The appellant sought UIM benefits for her remaining claims under her own policy with Donegal Mutual Insurance Company.  The appellant had executed a stacking waiver under the policy with Donegal.  **Id.** at 508-09, 957 A.2d at 1182-83.

In considering the interaction between Sections 1733 and 1738 of the MVFRL, the Court explained:

> We first review the process of UM/UIM recovery under the MVFRL.  UM/UIM coverage is triggered when the tortfeasor's liability coverage is not sufficient to cover the injuries incurred in an accident.  Once implicated, the provision of underinsured motorist coverage is governed by Section 1733[.]  As occurred in this case, the "policy covering a

---

[4] Section 1738(d)(2) contains an identical form regarding UIM coverage limits. **See** 75 Pa.C.S.A. § 1738(d)(2).

motor vehicle occupied by the injured person at the time of the accident" is in first priority ("First Priority UIM policy"), regardless of whether the injured person would otherwise be an "insured" under the policy. 75 Pa.C.S. § 1733(a)(1). In this case, the First Priority policy is Nationwide–UIM, which did not cover all the injuries suffered by Appellant. If the injuries exceed the coverage of the First Priority UIM policy, then the injured person may seek recovery under a "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured" ("Second Priority UIM policy"). 75 Pa.C.S. § 1733(a)(2). In this case, the Second Priority UIM policy is the Appellant's own Donegal–UIM policy.

Donegal, however, argues that Appellant should not recover under the Donegal–UIM policy because she waived stacking. [T]he application of the stacking waiver in this case turns on whether the use of the term "insured" in the stacking and stacking waiver section, 75 Pa.C.S. § 1738, is limited to the definition of "insured" as provided in the MVFRL's definitions section, 75 Pa.C.S. § 1702, which does not include guest passengers. If the term in Section 1738 is limited by Section 1702, then Section 1738, and the relevant provision relating to the waiver of stacking, does not apply to injuries received as a guest passenger in a vehicle because guest passengers are not "insureds."

We conclude that we are bound to apply the specific definition of "insured" provided by the General Assembly in Section 1702 of the MVFRL to the use of the term in Section 1738, absent any indication of the legislature that it should not be applied.[14] … [W]e are bound to interpret the stacking waiver in Section 1738 to apply only to "insureds" as defined by Section 1702, which does not include guest passengers.

[14] We acknowledge, however, that Section 1733(a) suggests that guest passengers are covered by most insurance policies, given that the first priority UIM coverage is the policy covering the vehicle occupied, regardless of whether the injured person is an insured. We refuse to use this implication, however, to override the specific definition of "insured" in Section 1702, which does not include guest

> passengers. As we are bound by the statute as written, we leave amendment of the MVFRL to the legislature to clarify what is required of insurers concerning guest passengers.
>
> While we hold that Appellant's recovery under the Donegal–UIM policy is not barred by her waiver of stacking, we must still consider whether it is prohibited by the "Other Insurance" clause included in the Donegal–UIM policy. …

*Id.* at 520-21, 957 A.2d at 1189-90. To summarize, ***Generette*** held that an injured person can recover under Section 1733(a)(1) as a guest passenger with respect to the policy covering the vehicle in which he/she was riding during the accident (the first priority UM/UIM policy) and under Section 1733(a)(2) on any other policy on which he/she was an "insured" (the second priority UM/UIM policy), regardless of whether stacking was waived on the second priority UM/UIM policy. ***See id.***

Instantly, the parties agree that neither Appellant King nor Appellant Labar were "insureds" under the Sentry Select policy covering the vehicle in which Appellants were injured. Appellants initially recovered benefits under the Sentry Select policy in accordance with Section 1733(a)(1) as the first priority UM policy. As those benefits were insufficient to cover Appellants' claims, they then sought benefits under the Erie policy, of which Appellants were both insureds,[5] per Section 1733(a)(2), as the second priority UM policy.

---

[5] The parties agree both Appellant King and Appellant Labar were "insureds" under the Erie policy (Appellant King as a "named insured" and Appellant Labar as a "resident relative" of her aunt, who was also a "named insured").

- 12 -

Under **Generette**, Appellant King's execution of a "stacking waiver" is irrelevant to Appellants' recovery under Section 1733, because Appellants cannot "stack" benefits they receive from Erie with benefits they received from Sentry Select, where Appellants are not "insureds" under the Sentry Select policy. **See** 75 Pa.C.S.A. § 1702, 1738; **Generette, supra**. Thus, we agree with Appellants' position that Appellant King's execution of a stacking waiver does not bar their recovery from Erie.[6]

Nevertheless, our inquiry does not end here because Erie also claimed Appellants were barred from recovery due to the household exclusion contained in the policy. Consequently, we turn to Appellants' second and third issues, in which they argue that the trial court misapplied the holding in **Gallagher v. GEICO Indemnity Company**, 650 Pa. 600, 201 A.3d 131 (2019). Appellants assert the Supreme Court declared a similar household exclusion unenforceable in that case, as attempting to circumvent the statutory language relevant to a rejection of stacking at Section 1738.

Appellants claim that another section of the MVFRL, Section 1731 (governing rejection of UM coverage), provides the sole manner in which a person may reject UM coverage. Appellants maintain that any deviation from the rejection form set forth in Section 1731 requires an insurance company to provide UM coverage even where an insured did not pay for such coverage.

_____

[6] Based on our disposition, we do not have to decide whether the stacking waiver applied to "inter-policy" or "intra-policy" stacking.

- 13 -

Appellants insist that under *Gallagher*, the household exclusion cannot be used as a *de facto* rejection of UM benefits where Section 1731 provides the exclusive means for a rejection of UM benefits to occur.[7]   Appellants emphasize that premiums were paid to Erie for UM coverage, and Erie should not be able to deprive its insureds of the benefit of that which was purchased. Specifically, Appellants contend: "If under *Gallagher*, the household vehicle exclusion is an invalid means to waive the stacking of [UM] coverage, it should certainly be an invalid means to reject [UM] coverage.  There is no reason to draw a distinction."  (Appellants' Brief at 24).

Alternatively, Appellants argue that even if the household exclusion is enforceable to deny coverage to Appellant King, it should not bar coverage for Appellant Labar.  Appellants aver there is no dispute that Appellant Labar was injured by an uninsured driver, and that she falls within the definition of an "insured" under Erie's policy.  Appellants claim Appellant Labar was neither occupying nor struck by a motor vehicle owned by Appellant Labar or one of her relatives.  Appellants contend Appellant Labar does not fall within the

_____

[7] Erie contends that Appellants have waived on appeal any claim that the household exclusion violates Section 1731 under *Gallagher*, where Appellants raised that claim for the first time in their Rule 1925(b) statement. (*See* Erie's Brief at 8, 10-11; 20-21).  Our review of the record shows that Appellants preserved this claim in their sur-reply brief in opposition to Erie's motion for judgment on the pleadings, filed on January 17, 2020.  In response, Erie sought leave to respond to Appellants' brief to address this specific argument, and attached a proposed brief.  The trial court granted Erie's request and accepted its attached filing on January 22, 2020.  Thus, we reject Erie's assertion of waiver.

definition of "you" relevant to the exclusionary policy language. At a minimum, Appellants insist the exclusionary language is ambiguous and should be construed against Erie. Appellants conclude the household exclusion cannot bar coverage in this case, the court erred by granting Erie's motion for judgment on the pleadings, and this Court should reverse and remand for further proceedings. We disagree.

With respect to the household exclusion contained in insurance policies, this Court has explained:

> The household vehicle exclusion is one of several types of exclusionary clauses included in motor vehicle insurance policies providing uninsured motorist coverage. Specifically, the household vehicle exclusion exempts from uninsured motorist coverage any coverage for bodily injury sustained while occupying a vehicle owned by the named insured, the named insured's spouse, or a resident relative of the named insured, but not insured under the policy in question.

*Petrie, supra* at *2 n.4 (internal citation omitted).

In ***Gallagher, supra***, the insured had two insurance policies with GEICO, one for his motorcycle and one for his automobiles. The insured paid for stacked UM and UIM coverage for both policies. The insured was injured in an accident while riding his motorcycle, and recovered the full policy limits of UIM coverage available under the motorcycle policy. When the insured filed a claim for UIM coverage under the automobile policy, however, GEICO denied it based on the household exclusion provision. Because the insured had suffered bodily injury while occupying his motorcycle, which was not insured under the automobile policy, GEICO claimed the household exclusion

precluded the insured from receiving UIM motorist coverage pursuant to that policy. *Id.* at 604, 201 A.3d at 132-33.

Our Supreme Court held that the household exclusion did not bar inter-policy stacking under the facts of that case, explaining:

> [S]tacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies.
>
> Under the MVFRL, insureds can choose to waive stacked coverage. [75 Pa.C.S.A.] § 1738(b). If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. *Id.* at § 1738(c). Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. *Id.* at § 1738(d). This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.
>
> * * *
>
> This [household exclusion] policy provision, buried in an amendment, is inconsistent with the unambiguous requirements of Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that [the insured] did not sign the statutorily-prescribed UIM coverage waiver form. Instead, [the insured] decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.

*Gallagher, supra* at 611-12, 201 A.3d at 137-38 (some internal citations and footnote omitted).

- 16 -

Instantly, we have already decided that stacking under Section 1738 is not implicated under these facts, where Appellants were guest passengers and not "insureds" under the Sentry Select policy covering the vehicle involved in this accident. We reiterate that because Appellants were not "insureds" under the Sentry Select policy, there is no UM coverage on which to "stack" the Erie policy. *See Generette, supra*. Thus, the holding in *Gallagher*—that a household exclusion cannot circumvent the clear requirements of a rejection of stacking set forth in Section 1738—is not directly applicable here. *See Gallagher, supra*.

With respect to Appellants' claim that we should extend the rationale in *Gallagher* to render the household exclusion void as inconsistent with Section 1731, we initially observe that *Gallagher* did not mention Section 1731 in its decision. *See id.* Section 1731 of the MVFRL provides, in pertinent part:

### § 1731.  Availability, scope and amount of coverage

**(a)  Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).  Purchase of uninsured motorist and underinsured motorist coverages is optional.

**(b)  Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators or uninsured motor vehicles.  The named insured shall be informed that he may

reject uninsured motorist coverage by signing the following written rejection form:

**REJECTION OF UNINSURED MOTORIST PROTECTION**

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives in my household.  Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.   I knowingly and voluntarily reject this coverage.

_____
Signature of First Named Insured

_____
Date

\*      \*      \*

   **(c.1) Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location.  The forms must be signed by the first named insured and dated to be valid.  The signatures on the forms may be witnessed by an insurance agent or broker.  Any rejection form that does not specifically comply with this section is void.  If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists.  Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(a), (b), (c.1).

Although Appellants explain the holding in ***Gallagher*** and recite the

statutory language of Section 1731, they do not offer any other case law to support their position that we should expand the holding in **Gallagher** beyond the facts of that case. In the absence of a well-developed argument on this point, we decline to interpret **Gallagher** as broadly as Appellants suggest.[8] **See generally Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 884 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 221 A.3d 644 (2019) (stating: "When an appellant's argument is underdeveloped, we may not supply it with a better one"). Therefore, we hold that **Gallagher** does not bar applicability of the household exclusion in this case.

Here, the household exclusion bars coverage for damages sustained by "**anyone we protect**" while "**occupying**" or being struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for UM or UIM coverage under this policy. (**See** Complaint, filed 9/5/19, Exhibit A at Uninsured/Underinsured Motorist Coverage Endorsement, p.3; R.R. at 39a)

---

[8] We recognize that in **Petrie, supra**, this Court interpreted **Gallagher** as a "broad holding that the household exclusion provision cannot be used to skirt the express requirement under Section 1738 that an insurer must receive an insured's written acknowledgment that he knowingly decided to waive stacked UM/UIM coverage" and stated that **Gallagher** "is not limited to [its] facts…, but one that finds that the [household] exclusion is inconsistent with the requirements of Section 1738 of knowing waiver—a holding that is applicable to all policies for automobile insurance." **Petrie, supra** at *4 (explaining that just because insured did not purchase stacking, or that policies are from two different companies is irrelevant because Section 1738 requires knowing waiver of stacking from whom insurance is being obtained). Although this Court interpreted **Gallagher** broadly **as applied to Section 1738**, this Court did not consider or decide **Gallagher**'s applicability with respect to Section 1731. **See id.**

(emphasis in original)). Additionally, the policy defines "**you**," "**your**" or "**Named Insured**" as the "**Subscriber**" identified as a Named Insured on the "**Declarations**" and others identified as Named Insured(s) on the "**Declarations**." (*See id.* at General Policy Definitions, p.3; R.R. at 20a) (emphasis in original). In other words, the household exclusion bars UM coverage for damages its insureds sustained in a vehicle owned by a "named insured" that Erie did not cover under the policy.

Appellants do not dispute that they qualify as "anyone we protect" under this exclusion or that they were occupying a motor vehicle at the time of the accident that was not insured for UM coverage under the policy. Thus, to the extent the household exclusion applies, Appellants challenge its applicability only to Appellant Labar because neither she nor her relative was driving the vehicle involved in the accident. Nevertheless, the definition of "you" makes clear that it includes the "Named Insured" on the Declarations page of the policy. Thus, the "you" in the exclusionary language does not necessarily reference the claimant (Appellant Labar) but applies to a claim by any insured where a named insured (Appellant King) owned the vehicle in which the claimant was injured that was not insured by Erie. Notably, Appellants do not mention the definition of "you" contained in the policy in their appellate brief. As the policy is clear regarding the definition of "you," we see no ambiguity in the contract language. *See Allstate Fire and Cas. Ins. Co. v. Hymes*, 29 A.3d 1169 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012)

(stating that where language of contract is clear and unambiguous, court is required to give effect to that language); ***Hunyady v. Aetna Life & Cas.***, 578 A.2d 1312 (Pa.Super. 1990), *aff'd*, 530 Pa. 25, 606 A.2d 897 (1992) (explaining that this Court must construe insurance policy as whole and not in discrete units; declining to find ambiguity in policy definition of "you" referencing "named insured" on policy as opposed to actual claimant). Based upon the foregoing, we hold that Appellants are barred from coverage under the household exclusion in this policy, and Erie was entitled to judgment on the pleadings. ***See Rourke, supra***. Accordingly, we affirm.

Order affirmed.

Judge Colins joins this memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/21

- 21 -