J-A05037-22

2022 PA Super 85

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| CHARLES DAVIS AND KEYSTONE AUTOMOTIVE OPERATIONS, INC. | : : : : : | No. 310 MDA 2021 |
| v. | : : : : : | |
| HARTFORD FIRE INSURANCE COMPANY, INDIVIDUALLY AND D/B/A THE HARTFORD INSURANCE GROUP AND THE HARTFORD INSURANCE GROUP, INDIVIDUALLY AND D/B/A THE HARTFORD AND THE HARTFORD, | : : : : : : : : : : | |
| Additional Defendants | : | |

Appeal from the Judgment Entered February 11, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2822-2007

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED:  MAY 9, 2022**

Appellant, Charles Davis, appeals from the February 11, 2021 judgment entered in favor of Appellees, Hartford Fire Insurance Company, individually and d/b/a The Hartford Insurance Group and The Hartford Insurance Group, individually and d/b/a The Hartford and The Hartford (hereinafter, "Hartford"),

_____

[*] Former Justice specially assigned to the Superior Court.

following the trial court's order granting Hartford's motion for summary judgment; denying Appellant's counter motion for summary judgement; and vacating the arbitration award entered against Hartford on October 31, 2007 and modified on February 8, 2008. After careful review, we vacate the judgment and remand for proceedings consistent with this opinion.

This case stems from a September 9, 2005 motor vehicle accident in which Appellant was injured while operating a vehicle owned by Keystone Automotive Operations, Inc. ("Keystone") during the course and scope of his employment. The vehicle was insured by Hartford under a commercial automobile policy for the April 1, 2005 to April 1, 2006 policy term. This policy was first issued to Keystone in April 2002 and then renewed annually up and through the time of Appellant's accident. The record reflects that it was the practice of Hartford to obtain an Underinsured Motorist ("UIM") Coverage Rejection form for each policy term renewal. *See* "Action for Declaratory Judgment," 3/16/07 at ¶¶ 8-10. Hartford obtained a Rejection of UIM Coverage form signed by the Executive Vice President of Keystone in 2003 but failed to do so for the 2005-2006 policy at issue. *Id.* At the time of the accident, a Pennsylvania UIM Coverage Endorsement was appended to the 2005-2006 policy, although the policy did not specify a limit of UIM coverage for Pennsylvania. *See* notes of testimony – deposition, 7/5/14 at 49-50; notes of testimony – deposition, 7/23/15 at 197-199.

The trial court summarized the procedural history of this case as follows:

[Appellant] filed a claim with Hartford for benefits by correspondence dated October 17, 2005. The Hartford Policy had a basket deductible of $3,750,000.00 with a $250,000.00 deductible for each accident involving multiple coverages within the Hartford Policy.

In the October 17, 2005 letter, [Appellant] requested a certified copy of the Hartford policy so that he could determine the amount, if any, of [UIM] coverage available. After numerous failed attempts to contact Hartford, [Appellant] made a formal demand for Arbitration by correspondence dated November 17, 2005. When this correspondence went unanswered, [Appellant] filed a Writ of Summons against Hartford on December 16, 2005 in the Court of Common Pleas for Luzerne County. [Appellant] also filed a Petition requesting the Court appoint Hartford's arbitrator and a neutral arbitrator. A Rule Returnable dated December 17, 2005 was issued requiring Hartford to show cause as to why the Court should not appoint a neutral arbitrator and a hearing was scheduled for January 26, 2006. In an order dated January 23, 2006, the Court made its Rule Returnable absolute, by agreement of the parties, appointing a neutral arbitrator with Hartford also appointing its arbitrator at that time.

For the next month, Hartford participated in the Arbitration process. In a letter dated February 28, 2006, Hartford asserted that the subject policy did not include UIM benefits. On March 16, 2007, Hartford commenced the instant action seeking a declaratory judgment that the policy at issue does not provide UIM benefits. On March 21, 2007, Hartford filed a Motion to stay the pending UIM arbitration until there was a determination of coverage pending in its declaratory judgment action, which was opposed by [Appellant]. Hartford's Motion for Stay was denied in an order dated April 23, 2007.

The claim went to Arbitration on October 30, 2007, and on October 31, 2007 the panel awarded the amount of $2,930,000.00 to [Appellant]. On

- 3 -

> December 3, 2007, Hartford filed a Petition to Vacate or Modify the UIM Arbitration Award which is docketed to 2007-13910. [Appellant] opposed Hartford's Motion in an Answer and Brief in Opposition filed on December 19, 2007. After briefing was complete in that matter, the Arbitration Award was modified from $2,930,150 to $2,000,000 to reflect the purported policy limits of the insurance policy at issue by Court Order dated and filed February 8, 2008.

Trial court opinion, 5/4/21 at 2-5 (citations and footnotes omitted).

The question of whether the policy provided for UIM coverage remained undecided. Eventually, the stay of the action was lifted and on April 17, 2019, Hartford filed a motion for summary judgment. Appellant filed a counter motion for summary judgment of May 31, 2019. Following oral argument and the filing of supplemental briefs, the trial court entered an order on January 11, 2021 denying both motions. On January 25, 2021, Hartford filed a motion requesting that the trial court reconsider its denial of the parties' summary judgment motions. The trial court granted Hartford's request on February 8, 2021.

As noted, on February 11, 2021, the trial court entered an order granting Hartford's motion for summary judgment; denying Appellant's counter motion for summary judgement; and vacating the arbitration award entered against Hartford on October 31, 2007 and modified on February 8, 2008. The trial court entered judgment in favor of Hartford that same day.

In reaching this decision, the trial court found that the policy issued by Hartford for the 2005-2006 term did not specify a limit of UIM coverage for

Pennsylvania and, thus, the coverage limit was zero and the "Pennsylvania UIM Coverage Endorsement" (Endorsement 60) appended thereto was a nullity. *See* trial court opinion, 5/4/21 at 15-20. The trial court further held that Keystone effectively waived UIM coverage in Pennsylvania by executing a "Rejection of UIM Protection" form in 2003. *Id.* at 22-31. The trial court found that this form: (a) was applicable to the 2005-2006 policy, despite the fact that a new rejection form was never obtained for the 2005-2006 policy term; and (b) fully complied with Section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701-1799.7. *Id.*

On March 5, 2021, Appellant filed a timely notice of appeal. Appellant filed a six-page Pa.R.A.P. 1925(b) statement on March 24, 2021. The trial court filed its Rule 1925(a) opinion on May 4, 2021, indicating that it was relying on the reasoning set forth in its prior opinion and order entered February 11, 2021.

Appellant raises the following issues for our review:

1    Did the Trial Court err in finding that the Policy issued by [Hartford] to [Keystone]for the 2005-2006 term did not provide Pennsylvania [UIM] Coverage despite the fact that a Pennsylvania [UIM] Coverage Endorsement was appended to the Policy?

2.    With respect to the 2003 Rejection of [UIM] Protection form, did the Trial Court err in: (a) finding that it was applicable to the 2005-2006 Policy term; and (b) finding that it strictly complied with the requirements of the [Pennsylvania Motor Vehicle Financial Responsibility Law]?

3.    Did the Trial Court similarly err in dismissing the extracontractual bad faith claims once it determined that the 2005-2006 Policy term did not provide Pennsylvania [UIM] Coverage?

Appellant's brief at 3.

Our standard of review of a trial court's order granting summary judgment is well settled:

A reviewing court may disturb the order of the trial court only where it is established that the [trial] court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***JP Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1261-1262 (Pa.Super. 2013) (citations and internal quotation marks omitted).

Pennsylvania Rule of Civil Procedure 1035.2 governs motions for summary judgment and provides, in relevant part, as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

We begin by addressing Appellant's first two claims simultaneously. Appellant argues that the trial court erred in finding that the 2005-2006 policy issued by Hartford did not provide for UIM coverage at the time of his automobile accident, despite the fact that a UIM Coverage Endorsement was appended to thereto. Appellant's brief at 11-20. Appellant also contends that the trial court erred in concluding that the "Rejection of UIM Protection" form executed by Keystone in 2003 was applicable to the 2005-2006 policy term. *Id.* at 22-27. Following our careful review, we agree

It is well settled in this Commonwealth that in interpreting an automobile insurance policy, "a court must view the policy in its entirety, giving effect to all of its provisions." *Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111, 1121 (Pa.Super. 2007) (citations omitted). "An insurance policy must be read as a whole, and not in discrete units." *Clarke v. MMG*

*Ins. Co.*, 100 A.3d 271, 276 (Pa.Super. 2014) (citation and internal quotation marks omitted), *appeal denied*, 117 A.3d 294 (Pa. 2015). "[The] interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*." *Erie Ins. Exch. v. King*, 246 A.3d 332, 336 (Pa.Super. 2021), *appeal denied*, 259 A.3d 341 (Pa. 2021).

Pursuant to the Motor Vehicle Financial Responsibility Law (hereinafter, "MVFRL"), motor vehicle liability insurance carriers are required to offer the named insured UIM liability coverage, unless such coverage is rejected in accordance with the statute. Subsection 1731(a) of the MVFRL provides as follows:

> **(a) Mandatory offering.--** No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1731(a).

Under the MVFRL, insurers are also required to inform named insureds that they may reject UIM coverage by signing a written rejection form set forth in Subsection 1731(c). *See id.* § 1731(c).

Subsection 1731(c.1) further provides that if an insurer's UIM coverage rejection form does not "specifically comply" with Section 1731, then UIM

coverage shall be equal to the policy's bodily injury liability limits. Specifically, Subsection 1731(c.1) states as follows:

> **(c.1) Form of waiver.--**Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

*Id.* § 1731(c.1).

Here, the record reflects that the policy at issue expressly provided for UIM coverage at the time of Appellant's September 9, 2005 accident. It is undisputed that the 2005-2006 policy issued by Hartford contained a UIM Coverage Endorsement. Additionally, the UIM Coverage Endorsement was referenced on both the Declarations Pages and in the List of Policy Provisions and Endorsements. *See* Hartford's Motion for Summary Judgment, 4/17/19, Exhibit M – Hartford Policy, 2005-2006 Policy Term.

As discussed, under the MVFRL, "Section 1731 mandates that an insurance company issuing a policy in the Commonwealth of Pennsylvania

must provide UM/UIM coverage equal to the bodily injury liability coverage, unless the insured validly rejects UM/UIM coverage or validly requests lower limits of coverage pursuant to section 1734." ***Weilacher v. State Farm Mut. Auto. Ins. Co.***, 65 A.3d 976, 983 (Pa.Super. 2013) (citations omitted); ***see also*** 75 Pa.C.S.A. § 1731(c.1).

The insurance policy issued by Hartford to Keystone and in effect at the time of Appellant's accident provided $2,000,000.00 in liability coverage. Thus, absent a valid and specific rejection for the 2005-2006 policy term, the Pennsylvania UIM coverage limit was also $2,000,000.00.

Hartford would have this Court find that the UIM Coverage Endorsement was issued as a result of a "clerical error" and the Rejection of UIM Coverage form executed by Keystone in 2003 was applicable to the 2005-2006 policy. ***See*** Hartford's brief at 10. We decline to do so.

Hartford acknowledged that a signed Rejection of UIM Coverage form was never obtained from Keystone for the 2005-2006 policy term, pursuant to its own policies and procedures, and it specifically appended the UIM Coverage Endorsement to the 2005-2006 policy. Contrary to the trial court's findings, there was also no valid and specific rejection of the UIM coverage for the policy in effect at the time of the accident.

It is immaterial that the policy issued by Hartford for the 2005-2006 term did not specify a limit of UIM coverage for Pennsylvania. Pursuant to the MVFRL, liability and UIM coverages must be co-extensive unless rejected in

- 10 -

accordance with Subsection 1731. **See id.** Instantly, no Rejection of UIM Coverage form was ever executed by Keystone for 2005-2006 policy term, and thus, by operation of law, the policy at issue was required to provide UIM coverage in an amount equal to the liability coverage of that policy, $2,000,000.00.

Based on the foregoing, we find that the trial court failed to give full effect to all the terms of the 2005-2006 policy, namely, the UIM Coverage Endorsement appended thereto. Accordingly, we hold that the trial court erred in granting summary judgment in favor of Hartford; vacate the February 11, 2021 judgment; and remand for proceeding consistent with this opinion.[1]

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/09/2022

---

[1] In light of our disposition, we need not address Appellant's remaining claim of trial court error.

- 11 -